# UNITED STATES DISTRICT COURT
### for the
### Western District of North Carolina

FILED
CHARLOTTE, NC

FEB 1 1 2019

US DISTRICT COURT
WESTERN DISTRICT OF NC

|  |  |
|---|---|
| United States of America | ) |
| v. | ) |
| (1) Francisco Garcia-Martinez, (2) Rodolfo Martinez, | ) |
| (3) Oscar Rangel-Gutierrez, (4) Raul | ) |
| Rangel-Gutierrez, (5) Regulo Rangel-Gutierrez, and | ) |
| (6) Rigoberto Rangel-Gutierrez | ) |

Case No.  3:19-mj- 38

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____2013 to February 2019_____ in the county of ___Iredell and Mecklenburg___ in the

___Western___ District of ___North Carolina___ , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. 841(a), 841(b)(1)(A), 846 | Conspiracy to distribute and to possess with intent to distribute a mixture and substance containing 500 grams or more of methamphetamine and 5 kilograms or more of cocaine. |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Timothy M. Bradley, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  ___02/09/2019___

_____
*Judge's signature*

City and state:  ___Charlotte, North Carolina___

U.S. Magistrate Judge David C. Keesler
*Printed name and title*

**ATTACHMENT A:**
**AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND**
**SIX ARREST WARRANTS; SEARCH WARRANTS FOR FIVE REAL PROPERTIES**
**AND TEN VEHICLES; FORFEITURE SEIZURE WARRANTS FOR FOUR VEHICLES;**
**AND AN ORDER AND LIS PENDENS FOR ONE REAL PROPERTY**

I, Timothy M Bradley, Special Agent of the United States Department of Homeland Security, Homeland Security Investigations (HSI), being duly sworn and deposed, states as follows:

1.　　Your Affiant is an investigator or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered to conduct investigations of, and to make arrests for, the offenses enumerated in Title 8, 18, 19, 21, 31 United States Code and other related offenses. I was previously employed as a United States Customs Inspector with the Department of Treasury for six years. I have been employed as an HSI Special Agent since May 12, 2002, during which time I have completed the Criminal Investigator Training Program and the Immigration and Customs Enforcement, Special Agent Training programs at the Federal Law Enforcement Training Center. I am currently assigned to a Narcotics Smuggling Group in the Charlotte, North Carolina HSI office and have conducted investigations focusing on international narcotics trafficking involving the unlawful importation, transportation, and distribution of controlled substances and related money laundering activities. Through investigations and training, I have become familiar with the methods and schemes employed by narcotics dealers to obtain, smuggle and distribute illegal narcotics.

2.　　Through investigations and training, I have become familiar with the methods and schemes employed by narcotics dealers to obtain, smuggle and distribute illegal narcotics. I have also become familiar with and utilized a wide variety of investigative techniques, including the

use of pen registers, trap and trace devices, and wire communications intercepts. I am currently one of the assigned case agents of the investigation referred to in this Affidavit, which is comprised of representatives from HSI and various other state, county, and city police agencies.

3.     As a result of my personal participation in the investigation of matters referred to in this Affidavit and based upon reports made to me by other law enforcement officials, I am familiar with the facts and circumstances of this investigation. The information contained in this Affidavit is provided to establish probable cause that the individuals identified herein have engaged in one or more violations of Title 21, United States Code, and is provided in support of:

a.     a Criminal Complaint and Arrest Warrants for the Defendants identified in this Affidavit;

b.     Search and Seizure Warrants for the five real properties and 10 vehicles identified in Attachments B and C hereto;

c.     civil and criminal forfeiture Seizure Warrants for the four vehicles described in Attachment D hereto, because such vehicles are subject to forfeiture as property used or intended to be used to facilitate narcotics trafficking and because a restraining order would not be sufficient to secure the availability of the vehicles for forfeiture; and

d.     an Order and Lis Pendens for the one real property described in Attachment E hereto, because such property was used or intended to be used to facilitate narcotics trafficking.

Because the information in this Affidavit is provided for the aforementioned limited purpose, I have not included each and every fact known to me concerning this investigation.

4.     Based on my training and experience, and participation in controlled substance investigations, and financial investigations, which result from violations of narcotics laws, I know:

a.     That large-scale narcotics trafficker must maintain on hand large amounts of United States currency in order to maintain and finance their ongoing drug business.

b.     That drug traffickers very often place assets in names other than their own to avoid detection of these assets by law enforcement.

c.     That even though these assets are in other persons' names, the drug traffickers continue to use these assets and exercise control over them.

d.     That drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers relating to the importation, transportation, ordering, sale purchase, and distribution of controlled substances.

e.     That these aforementioned books, records, receipts, notes, ledgers, airline tickets, money orders, and other papers are readily available to the drug traffickers such as in their residences, places of business, and alternate storage locations (such as mini-storage facilities).

f.     That it is common for large scale drug traffickers to secrete contraband, including but not limited to packaging material and other paraphernalia, in secure locations for ready access, and to conceal them from law enforcement.

g.     That persons involved in drug trafficking conceal in secure locations, with ease of access, large amounts of currency and other proceeds of drug transactions, and financial instruments and other evidence of financial transactions relating to the obtaining, transfer, secreting, and spending of drug transaction proceeds.

h.     That when drug traffickers amass large amounts of money from the trafficking in illegal drugs that they attempt to hide their illegal origin. In order to accomplish this, they utilize foreign and domestic banks, cashier's checks, money drafts, real estate, and business fronts.

i.     That documents relating to such attempts to hide the illegal origin of such proceeds are kept where the traffickers have ready access to them, often in their residences, places of business, and alternative storage locations, and often in close proximity to illegal drugs.

j.     That it is common for drug traffickers to travel to major distribution centers and cities such as the Charlotte, North Carolina and Atlanta, Georgia areas and surrounding areas to receive and distribute drugs. That these methods of transportation include commercial airlines, commercial vessels, private aircraft, rental automobiles, private automobiles, and other such means of transportation.

k.     That it is common for the drug traffickers to keep and maintain records of their travels in locations for easy access such as their residences, places of business and mini-storage facilities.

l.     That drug traffickers commonly maintain addresses or telephone numbers, in books, papers, cell phones or tablets, which reflect names, addresses, and/or telephone numbers for associations in the drug trafficking organization, and keep these records in their residences, places of business and mini-storage facilities.

m.     That firearms are considered "tools of the drug trafficking trade." That is, traffickers often possess firearms to protect themselves, their drugs, and their proceeds from law enforcement, competitor drug traffickers, and would-be thieves.

n.     That the drug traffickers take or cause to be taken photographs of them, their associates, their property and their drugs, and that they usually keep these photographs in their residences, places of business, and alternative storage locations with other drug-related documents.

## FACTS IN SUPPORT OF PROBABLE CAUSE

5.     Beginning in May 2018, as part of an OCDETF Operation Lawless Town, HSI, in conjunction with ATF, DEA, IRS-CI and various state and local law enforcement agencies, has targeted an extensive network of methamphetamine and cocaine distributors operating in the Western District of North Carolina. Those efforts have resulted in the federal arrests and prosecution of several methamphetamine and cocaine traffickers and the seizure of more than four kilograms of methamphetamine, four kilograms of cocaine, $200,000 in United States currency and two firearms. Current investigative efforts focus on OSCAR Rangel-Gutierrez as the principle target of this investigation, in large part due to his involvement in a drug trafficking organization (DTO) operating around the Western District of North Carolina (WDNC). The facts set forth herein only apply to a specific facet or cell of this organization.

6.     From at least as early as in or about 2013 to in or about February 2019, in Iredell County and Mecklenburg County, within the Western District of North Carolina, Defendants (1) Francisco GARCIA-Martinez, (2) Rodolfo MARTINEZ, (3) OSCAR Rangel-Gutierrez, (4) RAUL Rangel-Gutierrez, (5) REGULO Rangel-Gutierrez, and (6) RIGOBERTO Rangel-

Gutierrez,[1] conspired with each other and with other persons to distribute and to possess with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine and 5 kilograms or more of a mixture and substance containing a detectable amount of cocaine, Schedule II controlled substances, in violation of Title 21, U.S. Code, Sections 846, 841(a), and 841(b)(1)(A).

7.      In July 2018, investigators conducted numerous interviews with a confidential informant ("CI"). The CI does not have a criminal history and has been cooperating with law enforcement since March 2018, outlining the smuggling activities of a Mexican Cartel DTO operating out of Vera Cruz, Mexico, and the WDNC. The CI has provided statements against his/her own penal interest; the information has been corroborated to the extent possible through traditional investigative means; and the information has resulted in the arrest of major narcotics traffickers and the seizure of kilogram quantities of methamphetamine. The CI stated that he/she has worked for the Jalisco New Generation/Gulf Cartel for approximately eight years, transporting bulk amounts of United States currency derived from narcotics trafficking, although the CI did not have direct knowledge of the contents of the illicit merchandise transported to co-conspirators.

8.      Approximately five years ago, the CI met OSCAR Rangel-Gutierrez. Immediately after meeting, the CI transported bulk cash derived from the sale of narcotics for OSCAR to various locations within North Carolina. Through personal experiences and information derived from individuals residing in Vera Cruz, Mexico, the CI knows OSCAR to be a high-level United States-side Cartel member operating under the umbrella of the Jalisco New Generation/Gulf Cartel. OSCAR Rangel-Gutierrez has told the CI that he transports

---

[1] Because the case involves several brothers with the same last name, we use their first names rather than their last name to avoid confusion.

approximately 30 kilograms of cocaine and an unspecified large quantity of methamphetamine in a one-month period from Texas to Georgia and North Carolina.

9. Since July 2018, as a result of the investigation into OSCAR Rangel-Gutierrez, CI has arranged and conducted five separate methamphetamine transactions, under the direction and control of investigators, which involved OSCAR, REGULO, RAUL and RIGOBERTO.

10. On July 21, 2018, surveillance units conducted surveillance and recorded a meeting between the CI and OSCAR and REGULO during which they discussed the trafficking and distribution of narcotics. They used a 2016 Cadillac Escalade, North Carolina tag 4MYGRLZ, registered to OSCAR's wife.

11. On August 21, 2018, the investigative team conducted and recorded a controlled purchase that yielded 983 grams of 100% pure methamphetamine from OSCAR (and his brother Roberto, who lives at 1302 Hunter Oaks Lane, Apartment 10, Charlotte, North Carolina). He drove his 2018 Ford F-150 Super Crew Pickup Truck, North Carolina tag FEK-8066.

12. On September 6, 2018, the investigative team conducted and recorded a controlled purchase of 951 grams of 100% pure methamphetamine from OSCAR that was delivered from OSCAR's residence located at 226 Maple Creek Drive, Statesville. OSCAR used the 2016 Ford Transit 350, North Carolina tag FFC-2509 registered to his wife.

13. Based on the foregoing, on September 27, 2018, the investigative team initiated Federal court-authorized wire intercepts of OSCAR Rangel-Gutierrez's cellular telephone. During the course of the wiretap, the investigative team intercepted incriminating calls and obtained toll records including OSCAR, REGULO, RAUL, RIGOBERTO, and Roberto, among others, which provided an understanding of the large scope of the Rangel-Gutierrez DTO within the United States and abroad.

14. On October 1, 2018, the investigative team conducted and recorded a controlled purchase of 976 grams of 98.1% pure methamphetamine from OSCAR and RAUL that was delivered from OSCAR's residence located at 226 Maple Creek Drive. After the transaction, OSCAR and RAUL returned to 6645 Devongate Lane, Charlotte (RIGOBERTO's residence). They used the 2018 Ford F-150 Super Crew Pickup Truck, North Carolina tag FEK-8066; and 2016 Ford Transit 350, North Carolina tag FFC-2509. That same day, OSCAR had called Roberto and they discussed in coded language a narcotics transaction.

15. On October 15, 2018, the investigative team conducted and recorded a controlled payment of $4,500 by the CI to RIGOBERTO as payment for the methamphetamine from October 1st. RIGOBERTO took the proceeds to his home located at 6645 Devongate Lane. The following information was obtained from the wiretaps:

    a. At approximately 6:53 p.m, RIGOBERTO asked OSCAR if "they" (the confidential informant) were going to provide the money tonight. OSCAR provided RIGOBERTO the address where he would meet the CI and pick up the money and a detailed description of the vehicle that the CI would be driving.

    b. At approximately 7:11 p.m., OSCAR instructed RIGOBERTO where to meet the CI.

    c. At approximately 7:21 p.m., RIGOBERTO contacted OSCAR and advised him that he had picked up the money. OSCAR told RIGOBERTO he would pick the money up later. RIGOBERTO also said the CI wanted to place another order for methamphetamine later on, and OSCAR said, "Okay."

16. On October 23, 2018, the investigative team conducted and recorded a controlled

purchase of 492 grams of 99.5% pure methamphetamine from RAUL Rangel-Gutierrez that was delivered from RIGOBERTO's residence located at 6645 Devongate Lane.

17.    On November 13, 2018, the investigative team conducted and recorded a controlled purchase of 491 grams of 100% pure methamphetamine from OSCAR Rangel-Gutierrez that was delivered from OSCAR's residence at 226 Maple Creek Drive.  At the time of the transaction, the investigative team conducted surveillance at 1302 Hunter Oaks Lane and observed RIGOBERTO's 2014 Chevrolet Silverado pickup truck, with a Texas tag, there.

18.    Members of the investigative team believe -- based on wire intercepts, surveillance, and other facts discovered from the investigation -- that OSCAR and REGULO transport illicit proceeds, derived from the sales of narcotics, when they travel from Myrtle Beach to Charlotte. For example, on January 18, 2019, law enforcement observed OSCAR and REGULO drive from their worksite in Myrtle Beach, South Carolina directly to Charlotte, no stops in between, to a meeting with the CI during which they discussed obtaining multiple kilograms of cocaine from Houston, Texas.  (They used a 2019 Dodge Ram Pickup Truck, North Carolina tag PLC-9758, registered to OSCAR's wife.)  After the meeting, OSCAR and REGULO drove to Juan Rangel-Gutierrez's residence at 1928 Birchcrest Drive, Charlotte.  Later that evening, OSCAR and REGULO departed Juan's residence and went to a night club until the late hours of the evening. We submit that they did not take the drug proceeds obtained in Myrtle Beach with them to the night club; rather, they stored the proceeds at 1928 Birchcrest Drive.

19.    On January 22, 2019, a black 2015 Camry with South Carolina tags, registered to Francisco GARCIA-Martinez, was utilized to transport $80,000 (a payment for three kilograms of cocaine) from Myrtle Beach, South Carolina to Houston, Texas.

20.    January 23, 2019, law enforcement in Houston photographed MARTINEZ and

OSCAR together prior to their meeting with an unidentified Hispanic male whereby they obtained at least three kilograms of cocaine.

21. On January 23 and 24, 2019, wire intercepts revealed that MARTINEZ and OSCAR occupied a 2019 Dodge Ram pickup truck, which is registered to OSCAR's wife, and drove from Houston to Statesville, acting as a lookout vehicle for the Camry, which contained the cocaine, that was occupied by GARCIA-Martinez and REGULO.

22. On January 24, 2019, surveillance units observed Francisco GARCIA-Martinez, Rodolfo MARTINEZ, and REGULO transport the three kilograms of cocaine to OSCAR's residence at 226 Maple Creek Drive, utilizing the 2015 Camry registered to GARCIA-Martinez. Law enforcement observed REGULO retrieve a blue bag with cocaine from the back seat of the vehicle and enter the attached garage of the residence. After the Camry left the residence approximately two hours later, law enforcement stopped it and identified GARCIA-Martinez, MARTINEZ, and REGULO. None of them have legal status in the United States. Moreover, REGULO has a prior conviction for illegal reentry.

23. In a subsequent wire intercept, OSCAR and REGULO discussed the aforementioned vehicle stop, and REGULO advised that he had "one in his pocket" (believed to be one kilogram of cocaine) and that law enforcement did not search them.

24. On January 26, 2019, the investigative team conducted a controlled purchase of approximately 1,134 grams of cocaine from OSCAR that was delivered from his residence at 226 Maple Creek Drive. He utilized the 2019 Dodge Ram Pickup Truck, North Carolina tag PLC-9758.

25. The investigative team obtained hotel records from the Baymont Hotel in Conroe, Texas, where GARCIA-Martinez, MARTINEZ, OSCAR, and REGULO stayed during the three-

kilogram transaction. GARCIA-Martinez paid cash for the night of January 22nd and REGULO paid for the night of January 23rd. GARCIA-Martinez provided a passport, telephone number, and email address. Toll data reveals that GARCIA-Martinez's cellular telephone contacted the source of supply in Mexico approximately 100 times during the time of the cocaine transaction in Houston, Texas.

26.    With regard to 109 Perthwood, Troutman, North Carolina, it is owned by Jose and Consuelo Diaz (parents of OSCAR's wife) and is believed to be used by MARTINEZ as his residence. As background, in 2014, the Troutman Police Department maintained a credible informant who stated there were individuals living at 109 Perthwood Drive who were storing large amounts of cocaine at that address; however, the informant was unable to infiltrate the residence.

27.    During surveillance in this investigation, agents have observed OSCAR and his wife at the 109 Perthwood Drive residence. And in wire intercepts, OSCAR and REGULO discuss OSCAR's wife wanting to invest in five kilograms of cocaine with some of the relatives residing at 109 Perthwood Drive.

28.    OSCAR's wife is the registered owner of the following six vehicles: 2019 Dodge Ram Pickup Truck, North Carolina tag PLC-9758 (which was used during the above-referenced meeting on January 18, 2019 and the above-referenced transaction on January 26, 2019); 2016 Cadillac Escalade, North Carolina tag 4MYGRLZ (which was used during the above-referenced meeting on July 21, 2018); 2018 Ford F-150 Super Crew Pickup Truck, North Carolina tag FEK-8066 (which was used during the transactions on August 21, 2018 and October 1, 2018); 2016 Ford Transit 350, North Carolina tag FFC-2509 (which was used during the transactions on August 21, 2018 and September 6, 2018); 2010 Ford Econoline Wagon, North Carolina tag

EEX-4704; and 2012 Ford Econoline Wagon, North Carolina tag DMM-450.

29.     RIGOBERTO is the registered owner of the following four vehicles: 2012 Ford Econoline E350 Van, North Carolina tag FCD-6406 (used by RIGOBERTO during the above-referenced controlled payment on October 15, 2018 and by RAUL during the controlled buy on October 23, 2018); 2016 Chevrolet Silverado, North Carolina tag TPE-5742; 2005 Ford F250 Super Duty 2005 Pickup Truck, North Carolina tag FJN-8601; 2014 Chevrolet Silverado Pickup Truck, Texas tag GTN-4995.

30.     In wire intercepts, OSCAR and RAUL have discussed firearms with each other, and they have texted photographs of firearms to each other.

31.     As of February 9, 2019, based on wire intercepts and debriefing with the CI, members of the Rangel-Gutierrez DTO have driven to Houston to pick up 5 kilograms of cocaine that the investigative team anticipates will arrive in the North Carolina or South Carolina area on or about February 11th, at which time the investigative team will attempt to arrest the Defendants. The CI has arranged with the DTO to pick up the cocaine, as well as 6 kilograms of methamphetamine, in Charlotte on or about February 15th.

32.     Based on training and experience, drug traffickers will quickly dispose of narcotics and other incriminating evidence if they become aware of the presence of law enforcement outside their residence. For example, drug traffickers will frequently flush narcotics down the toilet or burn records of their trafficking activities if they believe law enforcement officials are outside of their home. That factor, in combination with the understanding that at least a couple of the Defendants are known to possess firearms, establish reasonable suspicion that the Defendants could destroy evidence or create a substantial risk of harm to the law enforcement officers executing search warrants. *See United States v. Ramirez*, 118 S.Ct. 992 (1998). Thus,

we request that the search warrants be permitted to be executed before 6:00 a.m. or after 10:00 p.m., and be permitted to be executed without first knocking and announcing the presence of law enforcement.

## **CONCLUSION**

33.     Based upon my training, experience, and the facts of this investigation, I submit that there is probable cause for the proposed criminal complaint and six arrest warrants; search warrants of six real properties and ten vehicles; forfeiture seizure warrants for four vehicles; and an order and lis pendens for one real property.  Therefore, I request that the Court issue a warrant for the same.

AFFIANT, SPECIAL AGENT TIMOTHY BRADLEY
HOMELAND SECURITY INVESTIGATIONS

*AUSA Steven R. Kaufman has reviewed this Affidavit.*

Subscribed and sworn to by me this 9th day of February 2019.

THE HONORABLE DAVID C. KEESLER
UNITED STATES MAGISTRATE JUDGE

## ATTACHMENT B
### Properties to be Searched

**The following real properties are to be searched:**

1. 226 Maple Creek Drive, Statesville, North Carolina



2. 6645 Devongate Lane, Charlotte, North Carolina



3. 1302 Hunter Oaks Lane, Apartment 10, Charlotte, North Carolina



4. 1928 Birchcrest Drive, Charlotte, North Carolina



5. 109 Perthwood Drive, Troutman, North Carolina



## **The following vehicles are to be searched:**

1. 2019 Dodge Ram Pickup Truck, North Carolina tag PLC-9758
2. 2016 Cadillac Escalade, North Carolina tag 4MYGRLZ
3. 2018 Ford F-150 Super Crew Pickup Truck, North Carolina tag FEK-8066
4. 2016 Ford Transit 350, North Carolina tag FFC-2509
5. 2010 Ford Econoline Wagon, North Carolina tag EEX-4704
6. 2012 Ford Econoline Wagon, North Carolina tag DMM-450
7. 2012 Ford Econoline E350 Van, North Carolina tag FCD-6406
8. 2016 Chevrolet Silverado, North Carolina tag TPE-5742
9. 2005 Ford F250 Super Duty 2005 Pickup Truck, North Carolina tag FJN-8601
10. 2014 Chevrolet Silverado Pickup Truck, Texas tag GTN-4995

**ATTACHMENT C**
**Items to be Seized during Search**

This Affidavit is made in support of this Application to seize the following items:

1.  Books, papers, records, receipts, personal telephone/address directories, telephone billing records, notes, ledgers, documents, airline tickets, travel documents, and documentation of occupancy or ownership of premises.

2.  Bank records, money orders, wire transfer records or receipts, financial instruments, financial transaction records, cashier's checks, traveler's checks, money drafts and related financial records, money wrappers, currency counting machines/devices.

3.  United States or foreign currency, negotiable instruments, stocks, bonds, jewelry, precious metals, any lock type box and safes as to conceal or hide from view.

4.  Property deeds, vehicle registrations or titles, and/or other items evidencing the obtainment, concealment, and/or transfer or expenditure of funds or currency.

5.  Cameras, photographs, videotapes or other images, in particular images of assets, controlled substances, and/or co-conspirators.

6.  Identification cards.

7.  Cellular telephones, tablets, computers or other electronic devices used for record keeping of drug ledgers.

8.  Packaging material, scales, presses, and other drug trafficking paraphernalia.

9.  Weapons, including but not limited to firearms and ammunition

**ATTACHMENT D**
**Vehicles to be Seized for Forfeiture**

This Affidavit is made in support of combined civil and criminal forfeiture Seizure Warrants, pursuant to 21 U.S.C. §§ 853(a)(2) (criminal forfeiture), 881(a)(4) and (7) (civil forfeiture), and 853(f) (criminal warrants), and 18 U.S.C. § 981(b) (civil warrants), for the following vehicles identified more specifically in the description of activity in the Affidavit:

1.  2019 Dodge Ram Pickup Truck, North Carolina tag PLC-9758

2.  2016 Cadillac Escalade, North Carolina tag 4MYGRLZ

3.  2018 Ford F-150 Super Crew Pickup Truck, North Carolina tag FEK-8066

4.  2016 Ford Transit 350, North Carolina tag FFC-2509

**ATTACHMENT E**
**Real Property identified for an Order and Lis Pendens**

This Affidavit is made in support of an Order and Lis Pendens, pursuant to 21 U.S.C. §§ 853(a)(2) (criminal forfeiture), 881(a)(4) and (7) (civil forfeiture), and 853(f) (criminal warrants), and 18 U.S.C. § 981(b) (civil warrants), for the following real property identified more specifically in the description of activity in the Affidavit:

The real property at 226 Maple Creek Drive, Statesville, North Carolina, more particularly described in a deed, Deed Book 2571, Pages 1492-1507, in the Iredell County Register of Deeds on or about 8/10/2018.